## CLARK v. NASH.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 218.   Argued April 19, 20, 1905.—Decided May 15, 1905.

Whether the statute of a State permitting condemnation by an individual for the purpose of obtaining water for his land or for mining, is or is not a condemnation for public use and, therefore, a valid enactment under the Constitution, depends upon considerations relating to the situation of the State and its possibilities for agricultural and mining industries.

The rights of a riparian owner in and to the use of water flowing by his land, are not the same in the arid and mountainous western States as they are in the eastern States.

This court recognizes the difference of climate and soil, which render necessary different laws in different sections of the country, and what is a public use largely depends upon the facts surrounding the subject, and with which the people and the courts of the State must be more familiar than a stranger to the soil.

While private property may not in all cases be taken to promote public interest and tend to develop the natural resources of the State, in view of the peculiar conditions existing in the State of Utah, and as the facts appear in this record, the statute of that State permitting individuals to enlarge the ditch of another and thereby obtain water for his own land, is within the legislative power of the State, and does not in any way violate the Federal Constitution.

THIS action was brought by the defendant in error Nash, to condemn a right of way, so called, by enlarging a ditch for the conveying of water across the land of plaintiffs in error, for the purpose of bringing water from Fort Canyon Creek, in the county and State of Utah, which is a stream of water flowing from the mountains near to the land of the defendant in error, and thus to irrigate his land.

The plaintiffs in error demurred to the complaint upon the ground that the same did not state facts sufficient to constitute a cause of action against them. The demurrer was overruled, and the defendants then waived all time in which to answer the complaint and elected to stand on the demurrer. Thereafter there was a default entered against the defendants, and each of them, for failing to answer, and the case was under the practice in Utah then tried and evidence heard on the complaint of the plaintiff, showing the material facts as stated in the complaint. The trial court found the facts as follows:

"That the plaintiff during all the times mentioned in said complaint, to wit, from the first day of January, 1902, down to the present time inclusive, was, has been and now is the owner of, in possession of and entitled to the possession of the south half of the northwest quarter of section 24, in township 4 south of range 1, east of Salt Lake meridian, in Utah County, State of Utah.

"That Fort Canyon Creek is a natural stream of water flowing from the mountains on the north of plaintiff's said land, in a southerly direction to and near to plaintiff's said land.

"That said land of plaintiff above described is arid land and will not produce without artificial irrigation, but that with artificial irrigation the same will produce abundantly of grain, vegetables, fruits and hay.

"That the defendants own land lying north of and adjacent to plaintiff's said land, and said defendants have constructed and are maintaining and jointly own a water ditch which diverts a portion of the said waters of the said Fort Canyon Creek on the west side of said creek (being the side on which

the plaintiff's said land is situated) at a point about one mile north of plaintiff's said land in section 13 of said township, down to a point within a hundred feet of plaintiff's said land, which said ditch is begun on the defendants' land and runs in a southerly direction over said defendants' land and on to and over the lands of the said defendants to said point about a hundred feet of plaintiff's said land.

"The plaintiff is the owner of and entitled to the use of sufficient of the remainder of the flow of the waters of the said Fort Canyon Creek to irrigate his said land, and that the irrigation of said land by the waters of said creek and the uses of the said waters in the irrigation of the said lands of the defendant is under the laws of this State declared to be, and the same is a public use.

"That the said waters of said Fort Canyon Creek cannot be brought upon the said plaintiff's said land by any other route except by and through the ditch of the defendants, owing to the canyon through which said ditch runs being such as to only be possible to build one ditch.

"That plaintiff has no other way of irrigating his said land except by the use of the waters of said Fort Canyon Creek and that unless plaintiff is allowed to enlarge the ditch of the defendants and have a right of way through said ditch for the flow of the waters of said Fort Canyon Creek, down to the plaintiff's said land, that said land of plaintiff will be valueless and the waters of said Fort Canyon Creek will not be available for any useful purpose.

"That said ditch of defendants is a small ditch about 18 inches wide and about 12 inches deep; that if the plaintiff is permitted to widen said ditch one foot more it will be sufficient in dimensions to carry plaintiff's said water to which he is entitled to his said land and the same can and will be put to a beneficial and public use, in the irrigation of the soil on plaintiff's said land hereinbefore described.

"That on the sixteenth day of January, 1902, and while the said defendants were not in the actual use of their said ditch,

and while the widening of said ditch at said time would not in any manner interfere with said defendants, other than the act of widening of same, the plaintiff requested of the said defendants the right to so widen the said ditch of the said defendants so to make it one foot wider, for the purpose of using the same to carry the water of the plaintiff onto his said land from said creek, and at said time and place offered to pay to said defendants all damages which the said defendants might suffer by reason of said enlargement, and offered to pay his proportion of the maintenance of keeping the same in repair, and asked of said defendants a right to continue the use of said ditch in common with said defendants, and to use the same so as not to interfere with the use of said ditch by said defendants, and it further appearing to the court that the said plaintiff is now and has ever since been willing to pay said damage and all damage incident thereto—and to pay his just proportion of the cost of maintaining said ditch. That the said defendants then and there and ever since have refused to permit plaintiff to enlarge said ditch or to use the same, or in any manner to interfere with the same.

"And it further appearing to the court that the said defendants would suffer damages by reason of the enlarging of said ditch one foot in width, in the sum of $40.00, and no more. And that the said plaintiff has deposited with the clerk of this court to be paid to the order of the said defendants the sum of $40.00, in full payment of such damages. That the land of the defendants not sought to be condemned by plaintiff would suffer no injury or damage.

"And it further appearing from said evidence that said ditch of the defendants can be widened by the plaintiff one foot more without injury to defendants or to said ditch, and that said widening of said ditch and the use thereof by the plaintiff will not in any manner interfere with the free and full use thereof by the defendants for the carrying of all waters of the said defendants."

Upon these facts the court found the following—

*"Conclusions of Law.*

"The court finds and decides that the plaintiff is entitled to a decree of this court condemning a right of way through defendants' said ditch, to the extent of widening said ditch one foot more than its present width and to a depth of said ditch as now constructed through the entire length thereof down to plaintiff's said land, for the purpose of carrying his said waters of said Fort Canyon Creek to the land of the plaintiff for the purpose of irrigation, and is entitled to an easement therein to the extent of the enlarging of said ditch and for the purposes aforesaid, and to have a perpetual right of way to flow waters therein to the extent of the said enlargement.

"That the defendants are entitled to have and recover from the said plaintiff the sum of $40.00 damages for injury sustained by reason of the enlargement and improvement above stated and such right of way and easement.

"That the plaintiff is required to contribute to the cost and expense of maintaining and keeping the said ditch in repair in an amount and proportion bearing the same relation to the whole amount of cost and expense as the waters he flows therein bears to the whole amount flowed therein both by the plaintiff and defendants.

"That the plaintiff recover no costs herein and judgment is hereby ordered to be entered accordingly."

Judgment having been entered upon these findings, the defendants appealed to the Supreme Court of the State, where, after argument, the judgment was affirmed. 27 Utah, 158.

*Mr. J. W. N. Whitecotton* for plaintiffs in error:

The taking not being a public use, plaintiffs in error are deprived of their property without due process of law in violation of the Fourteenth Amendment. As to what is a private and not a public use see *Taylor* v. *Porter,* 4 Hill, 140; *Re Eureka Basin Co.,* 96 N. Y. 42, 48; *Re Tuthill,* 163 N. Y. 133, and see authorities under this case in 49 L. R. A. 781; *Nesbitt* v. *Trumbo,* 39 Illinois, 110; *Sholl* v. *Coal Co.,* 118 Illinois, 427.

This taking may greatly injure the present owner of the ditch. This is not public irrigation. *Lorenz* v. *Jacobs,* 63 California, 73; *Lindsay Irrigation Co.* v. *Mehrtens,* 97 California, 680. The term "public use" is an expression of indefinite significance and its application to any particular case is to be determined by evidence. *Fallsbuy Co.* v. *Alexander,* 61 L. R. A. 129; *Gayland* v. *Sanitary District,* 204 Illinois, 576; *Lumber Co.* v. *Morris,* 63 L. R. A. 820; *Railway Co.* v. *Nebraska,* 164 U. S. 403, 416.

Water rights are not made public use by the constitution of Utah. Article I, § 22, and Art. 17, const. Utah; § 3588, Rev. Stat. Utah, 1898, subsec. 5, 6, 10; also §§ 1277, 1278; see also "Public" and "Private" as defined in Anderson's, Standard and Webster's Dictionaries.

Private property shall not be taken or damaged for public use without just compensation. Constitution of Utah, Art. I, § 22.

This constitutional provision means that private property cannot be taken against the will of the owner for a private use under any circumstances. So that the only question to be determined is, Is the use for which this condemnation is allowed a public use within the meaning of the Fourteenth Amendment? See *Bankhead* v. *Brown,* 25 Iowa, 540; *Matter of Albany Street,* 11 Wend. 151; *Railroad Co.* v. *Greeley,* 17 N. H. 47, 55; *Bloodgood* v. *M. & H. R. Ry. Co.,* 18 Wend. 9; *Beckman* v. *Railway Co.,* 3 Paige, 73; *Witham* v. *Osborn,* 4 Oregon, 318; *Helburn's case,* 3 Bland (Md.), 95; *Hoy* v. *Swan's Lessee,* 5 Maryland, 237, 244; *Dunn* v. *Charleston,* Harper (S. Car.), 189; *Osborn* v. *Hart,* 24 Wisconsin, 89; *Tyler* v. *Beacher,* 44 Vermont, 648; *Dickey* v. *Tennison,* 27 Missouri, 373; *Clark* v. *White,* 2 Swan, 540; *Sadley* v. *Langham,* 34 Alabama, 311; *Valley City Salt Co.* v. *Brown,* 7 W. Va. 191; *New Central Coal Co.* v. *Coal & Iron Co.,* 37 Maryland, 537; *Varner* v. *Martin,* 21 W. Va. 534; *Railroad Co.* v. *McComb,* 60 Maine, 290; *McChandless' Appeal,* 70 Pa. St. 210; *Embury* v. *Connor,* 3 N. Y. 511; *Scudder* v. *Trenton Delaware Falls Co.,* 1 N. J. Eq. 694,

726; *Robinson* v. *Swope*, 12 Bush (Ky.), 21, 27; *Harding* v. *Funk*, 8 Kansas, 315, 323; *Jenal* v. *Green Island Draining Co.*; 12 Nebraska, 163; *Waddell's Appeal*, 84 Pa. St. 90; *Brown* v. *Beatty*, 34 Mississippi, 227, 240; *Mining Co.* v. *Parket*, 59 Georgia, 419; *McQuilton* v. *Hallon*, 42 Ohio St. 202.

No appearance for defendant in error.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The plaintiffs in error contend that the proposed use of the enlarged ditch across their land for the purpose of conveying water to the land of the defendant in error alone is not a public use, and that, therefore, the defendant in error has no constitutional or other right to condemn the land, or any portion of it, belonging to the plaintiffs in error, for that purpose. They argue that, although the use of water in the State of Utah for the purpose of mining or irrigation or manufacturing may be a public use where the right to use it is common to the public, yet that no individual has the right to condemn land for the purpose of conveying water in ditches across his neighbor's land, for the purpose of irrigating his own land alone, even where there is, as in this case, a state statute permitting it.

In some States, probably in most of them, the proposition contended for by the plaintiffs in error would be sound. But whether a statute of a State permitting condemnation by an individual for the purpose of obtaining water for his land or for mining should be held to be a condemnation for a public use, and, therefore, a valid enactment, may depend upon a number of considerations relating to the situation of the State and its possibilities for land cultivation, or the successful prosecution of its mining or other industries. Where the use is asserted to be public, and the right of the individual to condemn land for the purpose of exercising such use is founded

upon or is the result of some peculiar condition of the soil or climate, or other peculiarity of the State, where the right of condemnation is asserted under a state statute, we are always, where it can fairly be done, strongly inclined to hold with the state courts, when they uphold a state statute providing for such condemnation. The validity of such statutes may sometimes depend upon many different facts, the existence of which would make a public use, even by an individual, where, in the absence of such facts, the use would clearly be private. Those facts must be general, notorious and acknowledged in the State, and the state courts may be assumed to be exceptionally familiar with them. They are not the subject of judicial investigation as to their existence, but the local courts know and appreciate them. They understand the situation which led to the demand for the enactment of the statute, and they also appreciate the results upon the growth and prosperity of the State, which in all probability would flow from a denial of its validity. These are matters which might properly be held to have a material bearing upon the question whether the individual use proposed might not in fact be a public one. It is not alone the fact that the land is arid and that it will bear crops if irrigated, or that the water is necessary for the purpose of working a mine, that is material; other facts might exist which are also material, such as the particular manner in which the irrigation is carried on or proposed, or how the mining is to be done in a particular place where water is needed for that purpose. The general situation and amount of the arid land, or of the mines themselves, might also be material, and what proportion of the water each owner should be entitled to; also the extent of the population living in the surrounding country, and whether each owner of land or mines could be, in fact, furnished with the necessary water in any other way than by the condemnation in his own behalf, and not by a company, for his use and that of others.

These, and many other facts not necessary to be set forth

in detail, but which can easily be imagined, might reasonably be regarded as material upon the question of public use, and whether the use by an individual could be so regarded. With all of these the local courts must be presumed to be more or less familiar. This court has stated that what is a public use may frequently and largely depend upon the facts surrounding the subject, and we have said that the people of a State, as also its courts, must in the nature of things be more familiar with such facts and with the necessity and occasion for the irrigation of the lands, than can any one be who is a stranger to the soil of the State, and that such knowledge and familiarity must have their due weight with the state courts. *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 159. It is true that in the *Fallbrook case* the question was whether the use of the water was a public use when a corporation sought to take land by condemnation under a state statute, for the purpose of making reservoirs and digging ditches to supply land owners with the water the company proposed to obtain and save for such purpose. This court held that such use was public. The case did not directly involve the right of a single individual to condemn land under a statute providing for that condemnation.

We are, however, as we have said, disposed to agree with the Utah court with regard to the validity of the state statute, which provides, under the circumstances stated in the act for the condemnation of the land of one individual for the purpose of allowing another individual to obtain water from a stream in which he has an interest, to irrigate his land, which otherwise would remain absolutely valueless.

But we do not desire to be understood by this decision as approving of the broad proposition that private property may be taken in all cases where the taking may promote the public interest and tend to develop the natural resources of the State. We simply say that in this particular case, and upon the facts stated in the findings of the court, and having reference to the conditions already stated, we are of opinion that the use is a

public one, although the taking of the right of way is for the purpose simply of thereby obtaining the water for an individual, where it is absolutely necessary to enable him to make any use whatever of his land, and which will be valuable and fertile only if water can be obtained. Other land owners adjoining the defendant in error, if any there are, might share in the use of the water by themselves taking the same proceedings to obtain it, and we do not think it necessary, in order to hold the use to be a public one, that all should join in the same proceeding or that a company should be formed to obtain the water which the individual land owner might then obtain his portion of from the company by paying the agreed price, or the price fixed by law.

The rights of a riparian owner in and to the use of the water flowing by his land are not the same in the arid and mountainous States of the West that they are in the States of the East. These rights have been altered by many of the Western States, by their constitutions and laws, because of the totally different circumstances in which their inhabitants are placed, from those that exist in the States of the East, and such alterations have been made for the very purpose of thereby contributing to the growth and prosperity of those States arising from mining and the cultivation of an otherwise valueless soil, by means of irrigation. This court must recognize the difference of climate and soil, which render necessary these different laws in the States so situated.

We are of opinion, having reference to the above peculiarities which exist in the State of Utah, that the statute permitting the defendant in error, upon the facts appearing in this record, to enlarge the ditch and obtain water for his own land, was within the legislative power of the State, and the judgment of the state court affirming the validity of the statute is therefore

*Affirmed.*

Mr. Justice Harlan and Mr. Justice Brewer dissented.