**HIMONAS v. DENVER & R. G. W. R. CO.**

No. 3929.

United States Court of Appeals
Tenth Circuit.

Dec. 23, 1949.

Edward Sheya, Price, Utah, and Dwight L. King, Salt Lake City, Utah (B. L. Dart, Price, Utah, Calvin W. Rawlings, Harold E. Wallace, Parnell Black, and Brigham E. Roberts, Salt Lake City, Utah, on the brief), for appellant.

Grant H. Bagley, Salt Lake City, Utah (W. Q. Van Cott, S. N. Cornwall, and D. McCarthy, Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Himonas has appealed from an adverse judgment in an action [1] brought by him against the Denver & Rio Grande Western Railroad Company.[2] The question presented is whether a right of way for an irrigation ditch and flume can be acquired by prescription across a right of way of a railroad, acquired under the Act of March 3, 1875, 18 Stat. 482, 43 U.S.C.A. § 934.

The facts as disclosed by the complaint and offer of proof by Himonas are these: Himonas owns a tract of land located east of the right of way of the Railroad Company. He devotes a portion of the land to raising crops by means of irrigation, and the remainder to raising livestock. The source of his water supply for irrigation and for watering livestock is Grassy Trail Creek, located west of the Railroad Company's right of way.

In May, 1927, one Robb, a predecessor in title of Himonas, constructed an irrigation ditch from such Creek across the Railroad Company's right of way to such land and a storage reservoir on such land.[3] The water carried in such ditch passed under the tracks of the Railroad Company through a flume. From May, 1927, until November, 1947, Himonas and his predecessor in title used the ditch and flume to carry water from such Creek across the Railroad Company's right of way to storage facilities on such land and applied such water to beneficial use on such land in the irrigation of crops and the watering of livestock. In November, 1947, the Railroad Company tore out the flume and deprived Himonas of the use of such water. Himonas sought damages and a decree requiring the Railroad Company to restore the flume and enjoining it from interfering with the conveyance of water through such ditch and flume across its right of way.

It was stipulated that the Railroad Company's right of way was acquired by a Federal grant under the Act of March 3, 1875, made to the Carbon County Railway Company, the predecessor in title of the Railroad Company. Thereupon, the trial court sustained a motion of the Railroad Company for a directed verdict by the jury on the ground that a right of way for an irrigation ditch could not be acquired by prescription across the Railroad Company's right of way.

By the grant under the Act of March 3, 1875, the Carbon County Railway Company acquired only an easement for railroad purposes and only that easement passed to the Railroad Company. The fee or servient estate remained in the United States. Great Northern Ry. Co. v. United States, 315 U.S. 262, 272, 62 S.Ct. 529, 86 L.Ed. 836. That case overruled earlier decisions which had held that a railroad which acquired a grant for a right of way under the Act of March 3, 1875, took a limited fee on an implied condition of reverter in the event the railroad should cease to use or retain the land for the purposes for which it was granted. See Missouri-Kansas-Texas R. Co. v. Ray, 10 Cir., 177 F.2d 454.

Since the Railroad Company did not own the fee, it could not dedicate or grant any part thereof, and no right in the servient estate could be acquired by prescription.

---

1. The action was originally brought in the district court of Carbon County, Utah, and was duly removed to the Federal court.

2. Hereinafter called the Railroad Company.

3. After acquiring the land, Himonas constructed additional storage facilities.

Neither could the Railroad Company grant any part of its right of way for private use nor could adverse interests be acquired in such right of way for private use by prescription.[4]

■ But, in making such grant, Congress did not intend to impose a barrier that could not be crossed between areas lying on opposite sides of the right of way. The purpose of the grant was to encourage, not impede, the development of the areas along the right of way. Clearly, Congress must have intended that crossings of the right of way could be acquired and other limitations imposed in favor of the public upon the exclusive occupancy of the Railroad Company of its right of way. Such was the conclusion of the Supreme Court in Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 272, 23 S.Ct. 671, 47 L.Ed. 1044.[5]

It becomes necessary, therefore, to determine the nature of the easement for the ditch and flume claimed by Himonas.

In the semi-arid regions of the west, water is the vitalizing element of agriculture. Out of the peculiar conditions and the necessities of that region has grown up a body of irrigation law. Crossings of railroad rights of way for irrigation ditches and canals are as essential as crossings for highways. The public is vitally interested in the application of water to beneficial uses. The utilization of water for irrigation and in the raising of livestock promotes the prosperity and well-being of the public as a whole. And so the states in the semi-arid west, by constitutional and statutory provision, have declared that waters belong to the public and have provided for condemnation of right of way for ditches under the power of eminent domain. See Wiel, Water Rights in the Western States, 3d Ed., vol. 1, p. 657, § 609.

■ Title 100, Chap. 1, § 1, of the Utah Code Ann.1943, provides: "All waters in this state, whether above or under the ground are hereby declared to be the property of the public, subject to all existing rights to the use thereof", and § 6 of the same Title provides: "Any person shall have a right of way across and upon public, private and corporate lands, or other rights of way, for the construction, maintenance, repair and use of all necessary reservoirs, dams, water gates, canals, ditches, flumes, tunnels, pipe lines and areas for setting up pumps and pumping machinery or other means of securing, storing, replacing and conveying water for domestic, culinary, industrial and irrigation purposes or for any necessary public use, or for drainage, upon payment of just compensation therefor, but such right of way shall in all cases be exercised in a manner not unnecessarily to impair the practical use of any other right of way, highway or public or private road, or to injure any public or private property."

And under the laws of Utah, an easement for a right of way for an irrigation ditch may be taken under the power of eminent domain, although the water is to be used by a single individual.[6]

■ Section 6, supra, is within the legislative power of the State of Utah and

4. Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 270, 23 S.Ct. 671, 47 L.Ed. 1044; Great Northen Ry. Co. v. Steinke, 261 U.S. 119, 132, 43 S.Ct. 316, 67 L.Ed. 564.

5. See, also, North Coast Ry. v. Northern Pac. R. Co., 48 Wash. 529, 94 P. 112, 114; Mize v. Rocky Mountain Bell Telephone Co., 38 Mont. 521, 100 P. 971, 974, 129 Am.St.Rep. 659, 16 Ann.Cas. 1189; Union Pac. Ry. Co. v. Leavenworth, N. & S. R. Co., C.C.Kan., 29 F. 728, 729, 730; Northern Pac. R. Co. v. City of Spokane, 9 Cir., 64 F. 506, 508, 509.

6. Nash v. Clark, 27 Utah 158, 75 P. 371, 373–375, 1 L.R.A.,N.S., 208, 101 Am.St.

Rep. 953, 1 Ann.Cas. 300; affirmed, Clark v. Nash, 198 U.S. 361, 367, 25 S.Ct. 676, 49 L.Ed. 1085, 4 Ann.Cas. 1171; Alcorn v. Reading, 66 Utah 509, 243 P. 922, 926. See, also: Tanner v. Provo Bench Canal & Irrigation Co., 40 Utah 105, 121 P. 584. For decisions to the same effect in other jurisdictions see: City of Albuquerque v. Garcia, 17 N.M. 445, 130 P. 118, 119; Young v. Dugger, 23 N.M. 613, 170 P. 61; Yunker v. Nichols, 1 Colo. 551; Schilling v. Rominger, 4 Colo. 100; De Graffenried v. Savage, 9 Colo.App. 131, 47 P. 902; Ellinghouse v. Taylor, 19 Mont. 462, 48 P 757; Oury v. Goodwin, 3 Ariz. 255, 26 P. 376; Helena Power Transmission Co. v. Spratt, 35 Mont. 108, 88 P. 773,

174

does not violate the Constitution of the United States.[7]

Since the use to which the ditch and flume were devoted was a public and not a private use, Himonas and his predecessors in title could have acquired an easement therefor by condemnation and it follows that they could acquire such easement by grant from the Railroad Company or by prescription.[8]

Of course, the ditch and flume must be maintained and used so as not to interfere with the use of the right of way by the Railroad Company for railroad purposes. Himonas offered to prove that it was so maintained and used.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

774–776, 8 L.R.A.,N.S., 567, 10 Ann.Cas. 1055. See, also: Fallbook Irrigation District v. Bradley, 164 U.S. 112, 161, 17 S.Ct. 56, 41 L.Ed. 369, and Wiel, Water Rights in the Western States, 3rd Ed., Vol. 1, pp. 657, 659, § 609. Contra, see: Gravelly Ford Canal Co. v. Pope & Talbot Land Co., 36 Cal.App. 556, 178 P. 150; Smith v. Cameron, 106 Or. 1, 210 P. 716, 27 A.L.R. 510; Vetter v. Broadhurst, 100 Neb. 356, 160 N.W. 109, 9 A.L.R. 578.

7. Clark v. Nash, 198 U.S. 361, 368, 25 S.Ct. 676, 49 L.Ed. 1085, 4 Ann.Cas. 1171L

8. Petrofesa v. Denver & Rio Grande Western R. Co., 110 Utah 109, 169 P.2d 808, 809, 810; Central Pac. R. Co. v. Alameda County, 212 Cal. 348, 299 P. 75, 79; Mize v. Rocky Mountain Bell Telephone Co., 38 Mont. 521, 100 P. 971, 974, 129 Am.St.Rep. 659, 16 Ann.Cas. 1189; Northern Pac. Ry. Co. v. Northern American Tel. Co., 8 Cir., 230 F. 347, 349, L.R.A.1916E, 572; Kinney on Irrigation and Water Rights, 2nd Ed., Vol. 2, § 1043, p. 1869, §§ 1044, 1045.