

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 27, 1960

Honorable Jerry N. Shurley          Opinion No. 791
County Attorney
Sutton County                        Re: Does the Commissioners'
Sonora, Texas                            Court of Sutton County
                                         have the power of emi-
                                         nent domain to condemn
                                         land for flood control
                                         easements where land is
                                         situated in an adjacent
                                         county and related ques-
                                         tions.

Dear Mr. Shurley:

        Your request for an opinion concerns several questions.
The first question is:

        "1.   Does the Commissioners' Court of
        Sutton County have the power of eminent do-
        main to condemn land for flood control
        easements if the land is situated in an ad-
        jacent county?"

        It is our understanding that a flood control project has
been instituted in your county under the provisions of Article
1581e, Vernon's Annotated Civil Statutes.  Your letter to us
stated that a portion of the area from which there is drainage
into your county lies in an adjacent county and that your Com-
missioners' Court is the contracting body for that project.
The pertinent sections of Article 1581e, Vernon's Annotated
Civil Statutes follow:

        "Section 1.   All counties in this State
        shall have the right of eminent domain to con-
        demn and acquire real property and easements and
        right-of-ways over and through all public and
        private lands for the making and digging of
        canals, drains, levees and improvements in the

county for flood control purposes and for drainage as related to flood control, and for providing necessary outlets for waters in such counties. No appeal from the finding and assessment of damages by the Special Commissioners appointed for that purpose shall suspend the work for which the land, right-of-way, easement, or other property is acquired. Where, in the judgment of the Commissioners' Court, the acquisition of the fee in the land is necessary, condemnation of the fee title may be had; provided, however, that the counties shall not have authority to condemn the fee of, as distinguished from an easement or right-of-way over, across or upon, any property lawfully used or occupied by any public utility, railroad, canal, levee or other person, concern, corporation or body politic devoting its property to a public use.

"Sec. 2. The proceedings with respect to condemning lands or interests therein, or other property, for the uses above specified shall be controlled by the statutes regulating such proceedings by counties in other cases, as provided in Article 3264, Revised Statutes of Texas, 1925, et seq." (Emphasis supplied.)

Article 3264 reads as follows:

"Sec. 1. When real estate is desired for public use by the State or by a county, or a political subdivision of a county, or by a city or town, or by the United States Government, or by a corporation having the right of eminent domain, or by an irrigation district, water improvement district, or a water power control district created by authority of law, the party desiring to condemn the property after having failed to agree with the owner of the land on the amount of damages shall file a statement in writing with the county judge of the county in which the land or a part thereof is situated. It shall describe the land sought to be condemned, state the purpose for which it is intended to be used, the name of the owner, if known, and that the plaintiff and the owner have been unable to agree upon the value of the land or the damages. Where the land lies in two or more counties, in one of which the owner resides, the statement

shall be <u>filed in the county of the owner's</u>
<u>residence."</u>   (emphasis supplied.)

It appears to be quite clear that Article 1581e,
Section 1, V.A.C.S. gives a county the right of eminent
domain in <u>all</u> public and private lands for flood control
purposes. The only possible language in that section which
might be urged as limiting the right of eminent domain to
land in the condemning counties, is "improvements in the
county." However, a reading of the entire Act shows that
this phrase is present for the sole purpose of restricting
condemnation proceedings to those projects of benefit to
the condemning county.

In construing this Act, we are guided by the well-known
rules of statutory construction.  The court in <u>Magnolia Petro-</u>
<u>leum Co. v. Walker</u> (Sup.Ct. of Tex.) 83 S.W.2d <u>929, 934,</u> stated:

> "No inflexible rule can be announced for
> the construction of statutes.  However, the
> dominant rule to be observed is to give effect
> to the intention of the Legislature.  Generally
> the intent and meaning is obtained primarily from
> the language of the statute.  In arriving at
> the intent and purpose of the law, it is proper
> to consider the history of the subject matter
> involved, the end to be attained, the mischief
> to be remedied, and the purposes to be accomplished."

Other jurisdictions concur with the <u>Magnolia Petroleum</u>
<u>Co.</u> case, supra, in applying such a rule to the interpretation
of all statutes.  It is generally accepted that the intent of
the legislature is paramount in the interpretation of public
grants of power just as it is paramount in the interpretation
of all laws.  <u>Acheson v. Johnson</u>, 147 Me. 275, 86 A.(2d) 628
(1952); <u>Valentine v. Lamont</u>, 20 N.J. Super. 454, 90 A.(2d)
143 (1952); <u>State v. Ritschel</u>, 220 Minn. 578, 20 N.W.2d 673,
168 A.L.R. 274 (1945); <u>Himonas v. Denver & R.G.W.R.Co.</u>,
179 F.2d 171 (1949).

Then in <u>Popham v. Patterson</u>, 121 Tex. 615, 51 S.W.2d
680, 683, the court stated:

> "In construing statutes it is the duty
> of the court to ascertain the legislative in-
> tent, and, when such intent is once arrived
> at, it should be given effect; in fact, such

intent is the law. In determining the legislative intent, the court should not look alone to any one phrase, clause, or sentence of the Act; and this includes the caption, the body of the Act, and the emergency clause."

By applying these rules, we look first to the caption of Acts 1949, Regular Session, Ch. 407, p. 759, (Art. 1581e V.A.C.S.). There the purpose is plainly said to be ". . . for making and digging canals, drains, levees and improvements for flood control. . ." It is to be noted that there is no restrictive language in the caption. Now, what does flood control encompass?

"Flooding rivers are no respecters of county lines. Suitable dam sites are determined by physical and topographical characteristics and not by arbitrarily fixed boundaries of political subdivisions. It is possible that the construction of a dam at a particular site would be of no material or practical value to the county within which such site was located, yet such dam and the resultant impounding of waters might be of inestimable value to those living within counties nearer the mouth of the river. In view of these circumstances, it would seem unlikely that the Legislature would arbitrarily restrict the power of eminent domain to the one particular county in which the required land was located." Richardson v. Cameron County, 275 S.W.2d 709 (Tex.Civ.App., no writ history.)

It seems uncontroverted that a county would be almost powerless to effect flood control if restricted to its borders. Since the Legislature must have intended to promulgate a useful law, we cannot say that Sutton County's right of eminent domain is restricted to its borders. Next we look to Section 2 of Article 1581e V.A.C.S., which requires that the condemnation proceedings be controlled by the statutes regulating such proceedings for counties in other cases, as provided by Article 3264 V.A.C.S. Article 3264 V.A.C.S., supra, clearly contains provisions for condemnation of land in other counties. Again, we cannot say that the Legislature did not intend for this procedural provision to be applicable.

By inspecting the general scheme of legislation /Smith v. Texas (Commission of Appeals) 53 S.W.2d 774/ relating to

flood control, we again see the intent of the Legislature. Article 7880-3 V.A.C.S. provides:

> "Water Control and Improvement Districts may be organized under the provisions of Section 59 of Article 16 of the Constitution for any one or more of the provisions therein provided as follows:  'Including the control, storing, preservation and distribution of its waters and flood waters. . . .'"

This is essentially the same function required of counties by Article 1581e, V.A.C.S.  Article 7880-125 V.A.C.S. provides that water districts may condemn "all lands . . . easements, rights-of way. . ." (emphasis supplied) for accomplishing the purposes of the Act which is the same type language used in Section 1 of Article 1581e V.A.C.S.  It continues by interpreting this to mean that the districts may acquire land either within or beyond the boundaries of the condemning district.  A fortiori this indicates that the Legislature, in legislation of this kind, does not hold political boundaries to be limiting factors.  Further, by enacting Article 7880-126(n) the Legislature affirmatively said that any county could "elect to proceed to condemnation under the provisions of, and in the manner established by . . ." the Water District Act.  Accepting this grant of power, we must assume that it meant just what it said, i.e., that counties could condemn in the same manner as a water district either within or without the boundaries of the condemning county. There is no logical reason to differentiate the rights of eminent domain in condemnation proceedings by a county under Article 1581e V.A.C.S. and Article 7380-126(n) V.A.C.S.  It is only the mechanical procedure that is different.

Therefore, we answer this first question in the affirmative.

Your second question is as follows:

> "2.  Can Article 7880-126(n) be used by the Commissioners' Court without forming a water district?"

Article 7880-126(n), V.A.C.S., states as follows:

> "Any County, Levee District, or Navigation District of this State may elect to proceed to condemnation under the provisions of, and in the manner established by, this Act, having regard only to causing such proceedings to conform to

the law of the being of any such govern-
mental agency." (Emphasis supplied.)

The Acts of 1925, 39th Leg., Ch. 25, are codified as Articles
7880-1 to 7880-153, V.A.C.S. inclusive. Article 7880-126(n)
clearly makes such Acts available to counties as to condemna-
tion. Such Article is quoted next above. It is seen that
this Article applies only to an election of a condemnation pro-
cedure, and does not require the county to organize itself as
a Water District. This Article is designed to be interchangeable
with Article 3264, V.A.C.S. as indicated by Article 7880-126(a)
which permits the Water District's Board of Directors to elect
to proceed under the provisions of Title 52, Eminent Domain,
V.A.C.S. The Legislature obviously intended to provide recip-
rocity of procedures in condemnation.

We therefore answer your second question in the
affirmative.

Your third question is:

"3. If the answer to No. 1 is affirmative,
what is the condemnation procedure to be em-
ployed?"

In view of our answers to questions 1 and 2, supra, our
conclusion is that the Commissioners' Court has the power of
election to proceed in condemnation under either Article 1581e
V.A.C.S. (utilizing the procedure set out in Article 3264 V.A.C.S.)
or under Article 7880-126 V.A.C.S.

Your fourth question is as follows:

"4. If the answer to No. 1 is negative,
how will the Commissioners' Court of Sutton
County proceed to obtain such easements?"

Since our answer to question No. 1 was in the affirma-
tive, we do not tender an answer to this question.

## SUMMARY

1. The Commissioners' Court of Sutton
County does have the power of eminent domain
to condemn land for flood control easements
where the land is situated in an adjacent
county.

2. Sutton County may elect to proceed to condemnation under the provisions of Article 7880-126(n) V.A.C.S., without forming a water district.

3. The Commissioners' Court of Sutton County may elect to proceed in condemnation of land situated in an adjacent county under either Article 1581e V.A.C.S. or under Article 7880-126 V.A.C.S.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Donald R. Bernard

Donald R. Bernard
Assistant

DRB:ljb

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

W. Ray Scruggs
Jack N. Price
Morgan Nesbitt

REVIEWED FOR THE ATTORNEY GENERAL
By:
Leonard Passmore